JORDAN, Circuit Judge,
concurring in part and concurring in the judgment:
I agree with the excellent opinion of the Majority in all but one respect. Like Judge Rendell and those joining her partial dissent, I cannot join Part IV.A of the Majority Opinion. I have serious doubts about the Majority’s assertion that there was no nonjudicial forfeiture proceeding here and, hence, I also question the conclusion that CAFRA does not apply. Nothing in CAF-RA or, to my knowledge, elsewhere in the United States Code specifies how a “nonjudicial forfeiture proceeding” actually begins. Although the government asserts, and the Majority agrees, that there were no such proceedings here, the language of CAFRA suggests otherwise.
Of particular note is 18 U.S.C. § 988(a)(1)(A)(iii). Under that section, when the government obtains a criminal indictment with an allegation that the property is subject to forfeiture before the 60-day period for notice has expired,[1] it has two choices concerning its notice obligation: (1) “send notice within the 60 days and continue the nonjudicial civil forfeiture proceeding under this section”; or (2) “terminate the nonjudicial civil forfeiture proceeding” and use the criminal forfeiture laws. 18 U.S.C. § 988(a)(1)(A)(iii) (emphasis added). Both verbs — “continue” and “terminate” — presuppose that a nonjudicial civil forfeiture proceeding has already begun, even though no “notice” designated as such may have been provided. In addition, § 983(e)(1) provides that “[a]ny person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person’s interest in the property....” That section similarly assumes the existence of a nonjudicial forfeiture proceeding, even though the government has not yet sent something designated as a “notice” to verify its intent to pursue forfeiture.
That is not to say that no notice is necessary. Some manifestation of the intent to keep the seized property is needed. The Code of Federal Regulations provides that an “administrative forfeiture proceeding” [2] commences, as relevant here, “when the first personal written notice” of the seizure is sent to interested parties. 28 C.F.R. § 8.8. The Majority makes the footnoted assertion, at the government’s urging, that, “although CAFRA does not specify the content of nonjudicial forfeiture notices, a letter that explicitly disavows any intent to initiate a forfeiture surely cannot suffice.” (Majority Op. at Í82-83 n.5.) I disagree. In my view, the simple omission of the word “forfeiture” from the government’s notice — when that notice did in fact assert the functional equivalent of a forfeiture — does not avoid the deadlines and protections of CAFRA. When (as *204 here) the government seizes property, asserts its title, and tells the previous owner that it will never return the property, that should surely suffice to trigger a “nonjudicial forfeiture proceeding.”[3]
It is noteworthy that, in teaching Department of Justice attorneys the proper contours of forfeiture policy, the 2016 Department of Justice Asset Forfeiture Policy Manual cautions its attorneys not to use formalistic distinctions to try to bypass CAFRA’s statutory deadlines. That manual provides that, even though CAFRA’s 90-day deadline may not apply to property subject only to judicial forfeiture, in a case involving such seized property, “the prosecutor should treat [a seized asset claim] as if it were a ‘claim’ referred to in section 983(a)(3)(A) ..., and should thus commence a judicial forfeiture action within 90 days of the receipt of the request.” Department of Justice Asset Forfeiture and Money Laundering Section, Asset Forfeiture Policy Manual at 58 (2016), available at https://www.justice.gov/criminal-afmls/ file/839521/download. The Manual establishes that deadline for judicial forfeiture because,
[i]f the Government were to seize property for forfeiture in a situation where administrative forfeiture was authorized, but then ignore the 60- and 90-day deadlines in sections 983(a)(1) and (3) on the ground that it intended all along to skip over the administrative forfeiture process and proceed directly with a judicial forfeiture, courts might suspect that the Government was actually conjuring an ad hoc excuse for missing the statutory deadlines, or had decided to bypass the administrative forfeiture proceeding for the express purpose of circumventing the statutory deadlines and the underlying congressional intent.
Id. at 57. That is an insight worth mulling over.
The Majority’s careful distinction between a “seizure” and a “forfeiture” — that the former transfers possession while the latter transfers title — is certainly correct. (Majority Op. at 183.) But a seizure will often be a component of a forfeiture. And that distinction is of limited utility here, because when the government seized the disputed coins it simultaneously asserted that it had no intention to seek forfeiture since it already had title. In other words, the government took possession and, in doing so, asserted title. It is difficult to square the Majority’s distinction between seizure and forfeiture on this record, when the government took the coins and said that it had both possession and title. Under these circumstances, the government’s claim of ownership and the manifestation of its intent to retain indefinite possession of the coins was, in my view, sufficient to initiate a nonjudicial forfeiture proceeding.
All of this accords with common sense because, in the absence of some clear description of what a notice must contain or how a nonjudicial forfeiture proceeding starts, the reasonable default conclusion is that it begins when the government takes your property and refuses to ever give it back — in short, when there is a seizure accompanied by some manifestation of an intent to claim ownership. I thus am inclined to agree with Judge Rendell that, when CAFRA speaks of a “nonjudicial forfeiture proceeding,” it is not referencing *205 some formal administrative action with the trappings of a quasi-judicial proceeding. The statute is using that phrase as a shorthand recognition that law enforcement agencies can and do leave the courts out of the process of taking and keeping property when it appears that no one else is claiming an interest in the property. As the Majority itself recognizes, “[njonjudicial forfeitures ... ‘permit[ ] the United States to determine whether property in its custody is unclaimed, and, if it is, to take ownership without the trouble and expense of court proceedings.’ ” (Majority Op. at 182 n.4 (quoting Small v. United States, 186 F.3d 1334, 1335 (D.C. Cir. 1998))). I thus do not accept the premise advanced by the Majority that, for there to have been a “nonjudicial civil forfeiture proceeding” in this case, there needed to be some government action beyond the seizure of the Double Eagles and the stated intent to retain possession and ownership of them.[4]
The oddity of the government’s decision to initially forgo any approach to a court in this case is that it was apparent from the outset there were claimants to the property in question. Laying claim to the Double Eagles without going to court was thus a bad idea from the start. Most every government agency involved here — the U.S. Attorney’s Office for the District of Columbia, the Secret Service, and the Department of the Treasury — seemed to share that view. Every agency except one: the Mint. A nonjudieiál approach to resolving the dispute over ownership should not have been the option chosen by the government, and, indeed, the District Court determined that the government’s actions here violated the Langbords’ constitutional rights, concluding “that the Government’s belief that the coins had been stolen did not diminish [the Langbord’s] Fourth Amendment rights and did not change the nature of the Government’s seizure.” (App. 153.) That conclusion has not been challenged on appeal and it is supported by the record. The District Court then faced the difficult decision of determining how to remedy the constitutional violation while giving both the Langbords and the government the day in court that should have been sought in the first instance. The Court’s decision requiring the government to “promptly initiate a forfeiture action” may or may not have been appropriate under the circumstances, but the government’s handling of the dispute was clearly ill-advised. (App. 157.) The safe and sensible choice would have been to comply with CAFRA.
That reasoning leads me also to reject the Majority’s characterization of the Langbords’ decision to file a seized asset claim as being “incongruous[ ].” (Majority Op. at 178.) A seized asset claim certainly sounds like, the right way to claim assets that the government has seized, so there was nothing incongruous about that step. Nor am I persuaded by the Majority’s assertion that the Langbords’ “seized asset claim was akin to filing a petition for writ of habeas corpus on behalf of someone not in custody — mismatched and ineffective.” (Majority Op. at 183.) To borrow the metaphor, it seems to me instead that the situation is more like one in which the government is keeping a habeas claimant locked in a 6’ by 9’ room while insisting that he is not really in custody. Just because the government says a person is not in custody does not make it so. Likewise, the government took custody of the Double Eagles and would not return them, so its assertion *206 that what was happening was not a forfeiture of whatever right the Langbords might have had does not make that assertion true. I would not go as far as Judge Rendell in faulting the government for “audacity” (Dissent Op. at 207), but I do believe we have allowed ourselves to be caught in a semantic game in this case. Labeled a “forfeiture” or not, what matters is what happened: the government took the property, claimed ownership, and kept it; the Langbords wanted it back. Resolving disputes like that is what forfeiture proceedings are for. A good argument can be made, and Judge Rendell has made it, that Congress meant for CAFRA to be the first option that the government and claimants turn to when fighting over who gets to keep disputed property.
But the strict deadlines in CAFRA do not always apply and we have reason to question whether they do here. The reason for doubt is not because the government says, “these are ours; you stole them.” CAFRA specifically contemplates property stolen from the government as being subject to CAFRA’s regime. See 18 U.S.C. § 981(a)(1)(C) (stating that property “subject to forfeiture” includes the proceeds of “specified unlawful activity” defined in 18 U.S.C. § 1956(c)(7), which includes the offense of theft of government property under 18 U.S.C. § 641). The reason that the CAFRA deadlines may not apply is, instead, as noted by Judge Rendell, that the Double Eagles may be merchandise valued at over $500,000, instead of being monetary instruments, so they may be statutorily ineligible for nonjudicial forfeiture. See 19 U.S.C. § 1607(a); Dissent Op. at 210-11.
No court has yet addressed that question, and it is an interesting one, but, unlike the dissenters, I do not see a need to remand the case for an answer. The unusual facts here provide an alternative basis for affirming the judgment of the District Court. As the Majority notes, the government pursued a proper declaratory judgment action to quiet title to the Double Eagles “in addition to the court-ordered judicial forfeiture proceeding.” (Majority Op. at 186 (original emphasis).) The government did so under a legal theory independent of its forfeiture claim, “namely, that the Government was attempting to regain possession of what it believed to be its own property.” (Id.) Because, in these particular circumstances, the District Court was within its discretion in. allowing the government to file a declaratory judgment action in addition to (and not in lieu of) the judicial forfeiture proceeding,[5] there is no need for us to assess the propriety of the forfeiture action itself. Even if the government violated CAFRA, the fact that the disputed property (allegedly) belonged to it all along allowed it to seek a separate declaratory judgment in its capacity as the property’s purported rightful owner. Given the unusual procedural and factual background of this case, any errors in the forfeiture proceeding did not infect the distinct declaratory judgment action. That is all we need to say, and judicial restraint counsels that we go no further. Cf. PDK Labs., Inc. v. Drug Enf't Admin., 362 F.3d 786, 799 (D.C. Cir. 2004) (“[I]f it is not necessary to decide more, it is necessary not to decide more.”) (Roberts, J., concurring in part and concurring in judgment).
In short, because a separate action to quiet title was permissible in this unusual context, we need not venture into the CAFRA thicket. I emphasize, however, *207 that my agreement that there is an independent and adequate basis on which to affirm here should not be taken as an endorsement of the government’s ignoring the statutorily provided mechanisms for forfeiture. The approach taken by the Mint is one that ought not be repeated.
I concur in the balance of the Majority’s opinion and in its judgment.

. As the Majority lays out, see Majority Op. at 181, CAFRA provides that the government generally has 60 days from the date of seizure to send to interested parties written notice of the seizure and its intent to forfeit the property, at which point a claimant may file a seized asset claim. See 18 U.S.C. § 983(a)(1)(A); 19 U.S.C. § 1607(a). If a seized asset claim is filed, the nonjudicial forfeiture cannot proceed, and the government then has 90 days to file a complaint for judicial forfeiture or to return the property pending the filing of a complaint. 18 U.S.C. § 983(a)(3)(A).

. The regulations define an "administrative forfeiture” as “the process by which property may be forfeited by a seizing agency rather than through a judicial proceeding,” and provide that the term “nonjudicial forfeiture” as used in § 983 bears the same meaning. 28 C.F.R. §§ 8.2, 9.2.

. Further, the government’s claim that it did not need to engage in a forfeiture proceeding because the Double Eagles were its own property is a logical box that I, like the Majority, will decline to step into. (See Majority Op. at 181 n.3.) That dubious position both assumes the truth of the government’s allegation without any requirement of proof and gives the government the power to unilaterally define when there is and is not a forfeiture.

. This case presents the circumstance of the government both taking possession and asserting ownership, which makes the outcome all the clearer to me. But if the government had simply said "we've got the coins and we’re keeping them,” without reference to ownership or title, I do not think that would be any less a forfeiture.

. I fully agree with Part IV.B.3 of the Majority's opinion, which explains why "the District Court committed no error when it allowed the Government to amend its counterclaim” to add the declaratory judgment claim. (Majority Op. at 188.)